IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| NICHOLAS SHANE VOORHIES ) | |
| ) | |
| v. ) | No. 1:13-0007 |
| ) | Judge Nixon/Bryant |
| SOCIAL SECURITY ADMINISTRATION ) | |

To: The Honorable John T. Nixon, Senior Judge

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration") denying plaintiff's applications for disability insurance benefits and supplemental security income, as provided under Titles II and XVI of the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 19), to which defendant has responded (Docket Entry No. 23). Plaintiff has further filed a reply in support of his motion. (Docket Entry No. 27) Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 11),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be GRANTED and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this Report.

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

# I. Introduction

Plaintiff filed his applications for benefits in April 2009, alleging disability onset as of December 1, 2007, due to strokes, right hand shaking, ankle and back problems, head injury, high blood pressure, and confusion. (Tr. 16, 74) His applications were denied at the initial and reconsideration stages of state agency review. Plaintiff subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The case came to be heard by the ALJ on August 24, 2011, when plaintiff appeared with counsel and gave testimony. (Tr. 454-75) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the ALJ took the matter under advisement until October 6, 2011, when she issued a written decision finding plaintiff not disabled. (Tr. 16-25) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012.

2. The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: hypertension, residuals from fractures, pancreatitis, lumbar degenerative disk disease and alcohol dependence (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the Administrative Law Judge finds that the claimant has the residual functional capacity to lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday; with unlimited ability to push and pull; and frequent ability to climb, balance,

stoop, kneel, crouch and crawl. The claimant can also understand, remember and carry out simple and detailed tasks, but not complex tasks.

6. The claimant is capable of performing past relevant work as a kitchen helper and assembly line worker/line worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 1, 2007, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 18-19, 24)

On December 7, 2012, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-10), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary of the pertinent medical evidence in this case is taken verbatim from defendant's brief (Docket Entry No. 23 at 8-12), although the undersigned has reordered the paragraphs of the summary chronologically.

Plaintiff was playing around/wrestling in October 2007, and presented to the emergency room with complaints of constant, sharp right wrist pain, reportedly relieved by nothing (Tr. 21). However, right wrist X-ray showed no evidence of any fracture/dislocation; Plaintiff was merely placed in a wrist brace (Tr. 21). Blood pressure was elevated, with readings of 173/120 and 160/98 (Tr. 21).

In May 2008, Plaintiff reported to emergency room staff that he had lacerated his left index finger while at work at Zaxby's (Tr. 21). However, only minimal bleeding was observed (Tr. 21). Plaintiff denied any pertinent medical history (Tr. 21). Examination of his affected digit showed normal range of motion, no vascular compromise, and normal sensation (Tr. 21). Urine drug screening was positive for both cocaine and marijuana (Tr. 21). The ALJ noted that these records indicate that Plaintiff's right index finger was lacerated and also his left; therefore, it was unclear which digit was affected (Tr. 21).

In December 2008, Plaintiff presented to the emergency room with complaints of right upper and lower extremity weakness, shaking of the right upper extremity and confusion, of one day's duration (Tr. 21). However, Plaintiff was alert, fully oriented, and followed commands (Tr. 21). Upon examination, normal strength was found in all four extremities (Tr. 21). Blood pressure was 160/115 (Tr. 21). CT scanning of the brain was essentially normal: there was no evidence of any hemorrhage, infarct, edema, mass effect, or midline shift (Tr. 21). Ventricles were normal in size (Tr. 21). Plaintiff was advised not to drink, to take his blood pressure at home, and to take two baby aspirin daily (Tr. 21).

Woodrow Wilson, M.D., examined Plaintiff in July 2009 (Tr. 23, 270-73). Plaintiff was described as alert and in no obvious distress, but was diaphoretic (Tr. 23). His blood pressure was 124/90 (Tr. 23). Plaintiff got out of the chair without difficulty (Tr. 23). His speech was a little slurred, and with stuttering at times (Tr. 23). On examination, his pupils were equal, round and reactive to light (Tr. 23). Extraocular motions were intact (Tr. 23). Hearing was noted as seeming to be okay (Tr. 23). Breath sounds were clear in all lung fields, while heart rate was regular and rhythmic (Tr. 23). Abdomen was soft and non-tender (Tr. 23). Neck was freely mobile and non-tender (Tr. 23). Full range of motion was obtained in

the cervical spine, except for right and left rotation, which was 60 degrees and 70 degrees, respectively (Tr. 23). Range of motion of the thoracolumbar spine was as follows: flexion to at least 90 degrees, with extension and lateral deviation in each direction at least 30 degrees (Tr. 23). The only limitation in motion of the bilateral shoulders was external rotation, which was done to 60 degrees (Tr. 23).

Plaintiff could not adduct his right $5_{th}$ finger due to an old injury, but had full abduction of all fingers, and no swelling or deformity was noted (Tr. 23). There was also full range of motion of the bilateral elbows, wrists, hands, hips, knees, and ankles (Tr. 23). Straight leg raising was negative (Tr. 23). However, Plaintiff held his right ankle very stiffly, and complained of some pain in his right foot when he walked because of a cyst on the plantar surface (Tr. 23). He also complained of some right ankle pain (Tr. 23). Plaintiff had difficulty with tandem walk, briefly performed heel/toe walk, and balanced on each foot independently (Tr. 23). Even though Romberg sign was negative, Plaintiff was very shaky and tremulous and very unsteady on his feet (Tr. 23). No joint effusion, calf edema, or edema was evident (Tr. 23). Motor strength throughout was 5/5, and deep tendon reflexes were 2+ and equal in all four extremities (Tr. 23).

Although sensation to light touch was intact, Plaintiff complained of numbness of the $1_{st}$ -$4_{th}$ digits of the right hand (Tr. 23). Cerebellar functioning was good, but Plaintiff had an obvious tremor, felt to be more anxiety-related (Tr. 23).

Considering all of the above findings, Dr. Wilson opined that Plaintiff could probably lift 20-25 pounds on a fairly regular basis; stand and walk 4-6 hours each in an 8-hour workday; and sit for 6-8 hours in an 8-hour workday, essentially concluding that Plaintiff could perform light work (Tr. 23; see id. last paragraph). The ALJ found significant that

Plaintiff reported having suffered a stroke in December 2008; yet, when Dr. Wilson reviewed Plaintiff's records, there was no mention of any cerebrovascular accident (Tr. 23).

Kanika Chaudhuri, M.D., completed a Physical Residual Functional Capacity Assessment ("PRFCA") in September 2009, in which she opined that Plaintiff was capable of medium work with no postural limitations (Tr. 283-91), whereas John T. Netterville, M.D., completed a PRFCA in April 2010, in which he opined that Plaintiff was capable of light work, with postural activities limited to occasional (but no balancing) (Tr. 343-51). Thus, both Drs. Wilson and Netterville were essentially of the opinion that Plaintiff could perform light work, whereas Dr. Chaudhuri was of the opinion that Plaintiff could perform medium work (Tr. 23, last paragraph).

Orthopedist, J. Frederick Wade, M.D., examined Plaintiff in June 2011 for complaints of right hand pain (Tr. 22). Plaintiff reported that he had fallen and hurt his right hand, and his right ankle was examined as well (Tr. 22). Upon examination, there was mild bruising at the DIP joint of the 4$_{th}$ digit of the right hand, with good range of motion and no instability or malalignment (Tr. 22). The right ankle was non-tender over the proximal fibula and down at the ankle, also without malalignment or crepitance (Tr. 22). X-rays demonstrated a healed right upper fibula fracture, with no displacement of the mortise (Tr. 22). Dr. Wade concluded that both these areas were stable and doing well (Tr. 22). Plaintiff was to return as needed (Tr. 22).

Plaintiff returned the following month, with what Dr. Wade described as a difficult history, much of it provided by Plaintiff's mother (Tr. 22). Specifically, Plaintiff had been involved in a motor vehicle accident in 1987, sustaining a fracture at L3 that did not require surgery, and there was no spinal cord injury or nerve paralysis (Tr. 22). He had had chronic

6

low back pain ever since then (Tr. 22). Plaintiff's mother went on to describe that Plaintiff has had falls, trembling in his arms and hands, and decreased balance, which had worsened since he fell on Mule day and fractured his ankle (Tr. 22). Plaintiff did not lose consciousness with that fall, but has had relatively constant low back pain, not really worse with any activity, and tingling of his legs (Tr. 22). He also has had a long history of neck pain, just across the posterior of his neck, that had not shown any change for years (Tr. 22).

Plaintiff was described as well-nourished, well-developed, and a bit disheveled (Tr. 22). He ambulated with a slow, steady, gait (Tr. 22). Although Plaintiff did not have hyperreflexia (upon examination), with a negative Hoffman's sign, negative plantar Babinski sign, and no clonus; he did have an odd intention tremor with his right hand and a tremor-type motion disorder in the bilateral extremities (Tr. 22). Deep tendon reflexes were ¼ throughout (Tr. 22). Motor mass and tone were otherwise normal (Tr. 22). Thoracic and back alignment were normal (Tr. 22). Palpitation and percussion led to subjective complaints of pain when palpated across the cervical and lumbar regions (Tr. 22). Non-painful, full range of motion, was obtained in the bilateral hips and knees, absent any crepitance or malalignment (Tr. 22). Two views of the lumbar spine revealed an old L2 compression fracture, probably no more than 20% of that superior endplate depressed; no evidence of any pedicle widening, facet subluxation, or spondylolisthesis (Tr. 22). An MRI of the lumbar spine showed mild old compression changes at L2; mild narrowing at L4-5 and L5-S1 with disc desiccation; broad-based protrusion centrally and right paracentrally at L-4, with some lateral recess stenosis and right neuroforaminal stenosis; and a broad-based protrusion centrally and left paracentrally at L5, with at least left neuroforaminal stenosis (Tr. 22-23).

## III. Conclusions of Law

### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the record contains substantial evidence that could have supported an opposite conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. E.g., Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, while this court considers the record as a whole in determining whether the SSA's decision is substantially supported, it may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. See Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are

demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f). "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry ... the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)).

The SSA's burden at the fifth step of the evaluation process can be carried by

relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff makes two arguments in seeking reversal of the ALJ's decision: (1) that the ALJ erred in discounting the credibility of his subjective pain complaints, and (2) that the ALJ erred in determining that he had the RFC to perform a range of medium work, when the medical evidence supports greater limitations, including the opinion evidence from the consultative examiner, Dr. Wilson, and one of the two nonexamining state agency

10

consultants, Dr. Netterville. As further explained below, the undersigned is persuaded by plaintiff's second argument, and finds a lack of substantial evidentiary support for the RFC finding in this case.

At the outset, in support of his arguments plaintiff makes reference to a December 2011 medical opinion from his treating physician, Dr. Mark Brewer (Tr. 440-45), which was not included in the record before the ALJ, but was first adduced in support of plaintiff's request for review of the ALJ's decision by the Appeals Council. (Docket Entry No. 18 at 5, 8) Based on this opinion, plaintiff further appears to allege error on the part of the Appeals Council in declining to review the ALJ's decision. Id. at 8. However, it is the ALJ's decision which is the subject of review here, as hers became the "final decision of the Commissioner of Social Security" once the Appeals Council declined review in the case. See 42 U.S.C. § 405(g). Accordingly, error on the part of the Appeals Council is not properly alleged in this case, nor may the court properly consider evidence that was submitted for the first time before the Appeals Council in deciding whether to affirm, modify, or reverse the ALJ's decision under the fourth sentence of § 405(g). See, e.g., Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); see also Cooper v. Comm'r of Soc. Sec., 277 F.Supp.2d 748, 753-54 (E.D. Mich. 2003).

Turning to the evidence properly considered here, plaintiff contends that the opinions of Drs. Wilson and Netterville limiting plaintiff to essentially light work, combined with the "obvious limitations to his right wrist, right ankle, left ankle and his cervical spine," are sufficient to render the ALJ's finding of his RFC for a range of medium work unsupported. As to the opinion evidence, the ALJ found that, "given the lack of clinical

findings consistently found upon examination, significant weight is accorded to the opinion of Dr. Chaudhuri, as it is more consistent with the totality evidence than the opinions of either Dr. Netterville or Dr. Wilson." (Tr. 23) Dr. Chaudhuri, who reviewed plaintiff's file and opined on September 29, 2009, that he could still perform medium work, found that Dr. Wilson's opinion that plaintiff was limited to light work was too restrictive in light of the clinical findings of full range of motion of all joints without pain, and the finding of 5/5 motor strength. (Tr. 290) In response to plaintiff's argument, defendant simply contends that substantial evidence supports the RFC finding in this case, before proceeding to alternatively argue that even if plaintiff could not perform medium work as opined by Dr. Chaudhuri, the vocational expert's testimony to the existence of available light jobs would substantially support a modified finding that plaintiff was not disabled even if limited to light work. Noting the statutory language empowering this Court to enter a judgment "affirming, modifying, or reversing" the agency decision, 42 U.S.C. § 405(g), defendant argues that the Court can modify the step four determination that plaintiff could return to his past relevant medium work, and instead determine from the record that plaintiff is not disabled at the fifth step of the sequential evaluation process, because his limitation to light work would be accommodated by a significant number of light jobs existing in the economy.

However, in the absence of any alternative findings by the ALJ as to the existence of a significant number of other jobs which plaintiff could perform, the undersigned finds that it would be improper to modify the decision here based on the raw testimony of the vocational expert, particularly inasmuch as the burden of proof shifts to the agency at the fifth step of the sequential evaluation process. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003) (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). Moreover, as plaintiff states in

his reply brief, even the ALJ's hypothetical questions based on the opinions of Drs. Wilson and Netterville did not include limitations which the medical record appears to support.

In particular, plaintiff has consistently complained of tremors or shakiness in his right hand, and problems with his ankles. (Tr. 16, 74) At his hearing before the ALJ, plaintiff identified these impairments as the source of his alleged disability. (Tr. 460-64) At his consultative examination on July 21, 2009, plaintiff's primary complaints were the shaking in his right hand and leg, and bilateral ankle pain. (Tr. 270) Dr. Wilson's examination results included notations that plaintiff's gait was a "little awkward," and that "he was very shaky and tremulous and very unsteady on his feet." (Tr. 272) Dr. Wilson further noted that "he does have an obvious tremor which may be more anxiety related," and diagnosed "[s]haking spells probably related to his alcohol abuse." (Tr. 273) Dr. Chaudhuri rendered his opinion two months after Dr. Wilson's examination of plaintiff (Tr. 290-91), and so could not have considered any subsequent medical evidence in the record. Dr. Netterville considered Dr. Wilson's report of an obvious tremor, as well as examination results from February and March 2010, before rendering his opinion in April 2010. (Tr. 350-51) Dr. Netterville also made note of the May 19, 2009 Social Security Field Office report, wherein the agency interviewer reported that plaintiff's right hand shook constantly and he had difficulty signing the form. (Tr. 68, 350) However, he did not assess any restrictions on plaintiff's ability to perform gross or fine manipulation. (Tr. 346)

One year after Dr. Netterville rendered his opinion, on April 12, 2011, plaintiff was seen by Dr. Wade, an orthopedist, in followup for a Maisonneuve fracture of his right ankle sustained as a result of a fall some ten days prior. (Tr. 363-66) Plaintiff had further

13

reported back pain in the wake of that fall, with x-rays revealing an old compression fracture at L2 and degenerative disk disease at L1-2, L4-5, and L5-S1. (Tr. 407) In further followup with Dr. Wade, plaintiff complained of both ankle and hand pain on June 7, 2011, after another fall. (Tr. 354-55) While both of these issues were described by Dr. Wade as "stable and doing well" (Tr. 355), plaintiff returned to his office on July 26, 2011, complaining of back pain. (Tr. 352) During his physical examination of plaintiff, Dr. Wade noted that "he did have an odd intention tremor with his right hand and a tremor type motion disorder in both lower extremities. ... It was a rather gross tremor." (Tr. 352-53) Dr. Wade diagnosed chronic low back pain and an extrapyramidal motion disorder, and provided the following remarks in disposition:

> I am not sure what to make of all this. I am going to get a lumbar MRI to rule out a neurological compression as any source. His physical findings and complaints would not lead you to believe that this is purely a lumbar process. It doesn't classically seem to present as a cervical process either. I am going to get the lumbar MRI and have him see neurology. ...

(Tr. 353) On August 1, 2011, plaintiff had the lumbar MRI performed, which yielded the following findings:

> There is broad-based protrusion centrally and right paracentrally of the L4 intervertebral disk with some lateral recess stenosis along with at least right neuroforaminal stenosis. There is broad-based protrusion centrally and left paracentrally of the L5 intervertebral disk with at least left neuroforaminal stenosis identified.

(Tr. 356-57) This radiology report contains a handwritten note that plaintiff had a neurology appointment scheduled, evidently on August 29, 2011, with a Dr. Chitturi. (Tr. 356) There is no further evidence of that appointment or its results in the record; plaintiff's hearing was

14

held on August 24, 2011, five days prior to the appointment.

Although the ALJ made note of Dr. Wade's most recent findings and the lumbar MRI results (Tr. 22-23), she did so before discussing the findings and assessment of Dr. Wilson which were rendered *two years* earlier. The ALJ gave greatest weight to the opinion of nonexamining consultant Dr. Chaudhuri, also rendered in 2009 and based largely upon the examination results obtained by Dr. Wilson, though it rejected the latter's assessment as overly restrictive. (Tr. 290) Dr. Chaudhuri was of course unable to consider the 2011 lumbar MRI results or the examination results and diagnoses from the treating specialist, Dr. Wade. The Sixth Circuit has recently held that "[w]here the non-examining source did not review a complete case record, 'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion' from a non-examining source." Miller v. Comm'r of Soc. Sec., --- F.3d ----, 2016 WL 362423, at *5 (6th Cir. 2016) (quoting Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009)). Here, the ALJ appears to have discounted entirely the significance of the lumbar MRI findings, focusing instead upon treatment notes through February 2011 which indicated no abnormality with any body system. (Tr. 21-22) However, even during visits where examination results were otherwise normal according to the checkbox treatment note, ataxia[2] or tremors were noted. (Tr. 411-12, 419)

---

[2]"Ataxia describes a lack of muscle control during voluntary movements, such as walking or picking up objects. A sign of an underlying condition, ataxia can affect movement, speech, eye movement and swallowing. Persistent ataxia usually results from damage to your cerebellum – the part of your brain that controls muscle coordination. Many conditions can cause ataxia, including alcohol abuse, stroke, tumor, cerebral palsy and multiple sclerosis." http://www.mayoclinic.org/diseases-conditions/ataxia/basics/definition/con-20030428

In reviewing evidence of a February 2010 hospitalization, the ALJ noted that "[i]t was significant that the claimant was also diagnosed with mild alcoholic DTs."[3] (Tr. 21) Dr. Wilson also referred to "shaking spells" that he thought attributable to alcohol abuse. (Tr. 273) It may well be that plaintiff's right hand tremors are the result of his alcohol abuse. But the ALJ's disability determination must, in the first instance, consider even those limitations which are attributable to substance abuse. 20 C.F.R. § 404.1535. The ALJ recognized this requirement, finding that with his "physical impairments, coupled with this use, the claimant is still not disabled," though she also found the credibility of his testimony to be reduced by his alcohol use. (Tr. 24) Regardless, it can be argued that the ALJ dismissed this symptom as not posing any significant work-related limitation based on the consultative and nonexamining physicians' lack of regard for it in rendering their assessments. However, in light of the development of the medical record since those physicians opined -- specifically, the motion disorder and gross tremor observed by Dr. Wade in plaintiff's right hand and both lower extremities, as well as the complaints of back pain and the lumbar MRI results obtained in 2011 -- the undersigned finds that the ALJ's reliance upon these 2009 examinations and assessments en route to her finding of no disability at any time prior to October 6, 2011, is not substantially supported. Moreoever, the ALJ's finding that there is no evidence "that even suggests" an impairment that would result in the difficulties with holding items, writing, lifting, standing, and walking which plaintiff testified to (Tr. 24), is incongruous with this more recent evidence from Dr. Wade, which could be viewed as

---

[3]Delirium tremens, or DTs, are a severe form of alcohol withdrawal that can manifest as tremors, and that may be caused by abstaining from alcohol after a period of heavy drinking, or by head injury, infection, or illness in people with a history of heavy alcohol use. https://www.nlm.nih.gov/medlineplus/ency/article/000766.htm

bearing out Dr. Wilson's observations of plaintiff's right hand tremor, awkward gait, and shaky, tremulous, and unsteady bearing on his feet. (Tr. 272)

This matter should be remanded to the agency for rehearing upon an updated medical record, and the issuance of a new decision.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record be GRANTED and that the decision of the SSA be REVERSED and the cause REMANDED for further administrative proceedings consistent with this Report.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

**ENTERED** this 1ˢᵗ day of April, 2016.

        <u> s/ John S. Bryant     </u>
        JOHN S. BRYANT
        UNITED STATES MAGISTRATE JUDGE